S. Samuel Di Falco, S.
In this accounting proceeding, a construction of the will is requested with respect to the exercise of the power of appointment created by the decedent’s will. This decedent died on April 23, 1950, and his will was duly probated in this county. His son, the donee of a limited power of appointment, died on July 25, 1962, a resident of Vermont.
The will of the decedent created a trust for the benefit of the donee, with a right for invasion of corpus to the extent of $6,000 annually. It provided that upon the death of the donee, the principal of the trust is to be paid “ to such person or persons from among a class consisting of the spouse of my said son, my descendants (other than my said son), spouses of my descendants and donee described in Section 812 (d) of the Internal Revenue Code of the United States as my said son shall by his Last Will and Testament direct.” In default of the exercise of the power, or upon failure validly to exercise the power, the trustees were instructed to pay the principal of the trust ‘ ‘ in equal shares to the descendants of my said son then living per stirpes.”
In his will the donee explicitly exercised the power granted to him by his father, appointing one third of the principal to his wife outright and the remaining two thirds in further trust for the use and benefit of six named children, “ share and share alike per stirpes ’ ’. The income was directed to be used during the minority of the children for their support, maintenance and education, and thereafter as each child attained the age of 21, “ his or her share of said income” was directed to be paid directly to the child.
The will then provides: “ and when said child arrives at the age of thirty years his (or her) share of the principal of said Trust, plus any unpaid accumulations, shall be paid over to him (or her) as the case may be.” The birth dates of the donee’s six children are as follows: July 23,1945, March 10,1947, March 28,1949, February 28, 1951, January 31, 1953 and December 31, 1958. Thus it is patent that the first three children were in being at the death of this decedent; the next two children were not then in being, but will reach the age of 30 years within 21 years after the donee’s death; the youngest child was not in being at the *833 death of the creator of the power and will not attain the age of 30 years "within 21 years after the death of donee.
The suspension of the power of alienation of realty or of the absolute ownership of personalty must be determined as of the death of the donor of the power, for it was at this time that the trust was created, but the length of the period of suspension is to be determined under the law in effect at the time of the execution of the power (Real Property Law, § 178). A power of appointment exercised in 1962 may suspend the absolute ownership of property for a period measured by lives in being and a flat term of not more than 21 years. (Real Property Law, § 42; Personal Property Law, § 11; both as amd. by L. 1960, ch. 448.) The measuring lives must, of course, have been in existence at the date of the creation of the power, to wit, on April 23, 1950. The donee could, therefore, have validly continued the trust for any reasonable number of lives that were in being on April 23, 1950 and a further term of not more than 21 years. We have seen that, with respect to five of his six children, the trust which the donee continued would terminate within the statutory period, that is, 21 years from the date of his death. There would be no difficulty at all in respect of his exercise of the power were it not for the fact that his youngest child will not reach the age of 30 until December 31, 1988, while the period of 21 years from the end of the measuring life (that of the donee) would end on July 25, 1983.
In amending the statutes governing the suspension of ownership of property, the Legislature also enacted certain rules of construction. Section 11-a of the Personal Property Law (added by L. 1960, ch. 452) reads: “Where an interest would, except for this section, be invalid because made to depend either for its vesting or for its duration upon any person attaining or failing to attain an age in excess of twenty-one years, the age contingency shall be reduced to twenty-one years as to all persons subject to the same age contingency.” This statute has counterparts in the English Law of Property Act of 1925 and in the statutes of Massachusetts, Connecticut and Maine (1960 Report of N. Y. Law Rev. Comm.; N. Y. Legis. Doc., 1960, No. 65 [G], pp. 343-344). The earliest in point of time is the English Act, but its text is quite different from the New York statute (15 Geo. v. ch. 20, § 163). The Massachusetts legislation appears to be quite similar to section 11-a of our law in both content and purpose. Professors Casner and Leach are given much credit for the Massachusetts legislation (see 5 Powell, Real Property, ¶ 827D, p. 838.69). Professor Leach made an illuminating analysis of the proposal *834 while it was still pending before the Massachusetts Legislature (Perpetuities Legislation, Massachusetts Style, 67 Harv. L. Rev. 1349). The analysis was prepared at the request of the Legislature and is offered “as an aid to interpretation if the bill should become law” {id., p. 1356). Although our statute does not follow the exact wording of the first portion of the provision discussed in that article, both statutes conclude in exactly the same verbiage, namely, ‘ ‘ the age contingency shall be reduced to twenty-one years as to all persons subject to the same age contingency.”
It is apparent that section 11 validates a trust such as the one continued by the donee, where the trust would continue beyond the permissible period because it was made to depend for its duration upon the youngest child’s attaining a specified age in excess of 21 years. The age contingency is reduced to 21 years. The only question is whether the age contingency is reduced only for the child whose age span would render the trust invalid or reduced for all children.
Professor Leach considered “ the often recurring case of a gift to A for life, remainder to such of his children as reach 25. The gift to the children was wholly void at common law, because A might have another child who might be less than 4 years old at A’s death. ’ ’ Pointing out that a statutory provision embodying the principle of second look would save the provision if the youngest child at A’s death was actually more than 4 years old, it would not save the gift if the child in point of fact was younger than 4 years. “If this occurs ”, he wrote, “ Section 2 comes into operation, reduces the age contingency to 21 for all children, and thus validates the whole gift ’ ’ (p. 1361). Referring specifically to the final 10 words of the statute, Professor Leach said: “ Where there is a testamentary gift to those members of a class who reach 25, and this is reduced to 21 under Section 2, the reduction applies to all other members of the class, even though some of them were living at testator’s death ” (pp. 1361-1362).
The proposal then under discussion contained a section, which declares that no gift shall be modified if it would have been valid before enactment of the statute. Adverting to the mandate of this latter provision, Professon Leach said: “ There can be cases in which an age contingency in excess of 21 would be valid as to some parts of a family disposition and invalid as to other parts; in such cases the age contingency is reduced only as to those parts of the disposition which would otherwise be void.” {Id., p. 1362.) Instances where shares have been severed and some held to be valid, others invalid, may be found in Dorr v. Lovering *835 (147 Mass. 530; see, also, Lovering v. Worthington, 106 Mass. 86); section 24.29 of volume 6 of the American Law of Property and section 389 of volume 4 of the Bestatement of the Law of Property.
If the law of New York on perpetuities had followed the common law, there would be little doubt that the operation of section 11 of the Personal Property Law on the will of the donee would result in the reduction of the age contingency in respect of all of the children. The will of the donee would then be made to read as if he had directed that the corpus be distributed to each child of his as he attained the age of 21 years. The fact is, however, that between the law of New York and the common-law rules governing perpetuities there were distinct differences in respects other than the period during which the power of alienation would be lawfully suspended.
What has been characterized as the “ most important particular in which the New York rule against perpetuities differs from the common law rule against perpetuities ” is in the applicability of our rule to the duration of trusts to receive and pay income to a named beneficiary. (4 Bestatement, Property, Appendix, ch. A, § 17.) The stringency of the two-life rule as applied to trusts has led to many so-called constructional devices that are more liberally and more widely employed in New York than elsewhere. One of these devices is the constructional preference for separability. (Bestatement, supra, § 33.) Moreover, an ambiguity justifying a constructional preference is more readily found in New York because the rule against perpetuities is itself a factor here in ascertaining whether an ambiguity exists. (Id., § 47.) The question of separability of a trust into concurrent interests is frequently encountered. The following example is given in the Bestatement: ‘ ‘ Thus if A directs his trustee to hold certain assets for the equal benefit of three or more children * * * and as each attains a stated age to pay over to such child a share of the corpus, an inference of separation into separate trusts, one for each child, is required by the equality of the shares of the children in the income coupled with the provision for the release from the trust administration of the same share of corpus at a fixed time in the life of each child. Under the rule discussed in f 56 each trust terminates when the child benefiting thereby attains the stated age ‘ or sooner dies. ’ A similar inference of separability is made when the trust is limited to last for the full life of each beneficiary, but on the death of each a distinct share is, either absolutely or under some circumstances, freed from the trust administration by directions *836 to pay it, free of the trust, to the beneficiary’s issue ” (id., § 51). It will be noted that our donee’s trust provision so closely fits this pattern as to be indistinguishable from it.
It thus becomes apparent that we are faced initially with certain important policy decisions: (1) though the New York statutes do not contain an explicit mandate not to modify any limitation that would have been valid without section 11-a, is such a mandate necessarily to be implied; (2) now that New York has moved toward the common-law rule of an unrestricted number of lives and a flat term of 21 years, should we still continue to employ constructional devices that were developed to rescue testamentary gifts that were imperilled only because of the two-life rule; (3) should we endeavor, insofar as is reasonably possible, to bring our construction of modern statutes into line with that of the other jurisdictions which have the same or similar statutes?
The first question, in the opinion of the court, should be answered in the affirmative. The opening words of our statute bear some indication of the legislative intent: ‘ ‘ Where an interest would, except for this section, be invalid ”. In other words, it is only where the interest would otherwise be invalid that the Legislature intends to modify the will. Moreover, in recommending the proposal, the Law Revision Commission discussed the cy pres rule which would give the court power to eliminate invalid features, while carrying out as nearly as may be the intention of the testator”, and the commission referred to the proposed legislation as “ [m]ore limited, but to the same end ”. (1960 Report, pp. 323, 343.) Finally, the established policy of this State is to require the courts to declare and effectuate the testamentary intent insofar as it fairly can do so without violating any rule or policy of the State.
The answer to the second question should, I think, be that New York will continue to apply principles that will preserve the testamentary scheme, effectuate the testator’s intent, and save the devise or bequest, but will not blindly apply rules that were originally created to serve these ends but which no longer contribute to any one of these goals. We must remember that our rules came into being to validate testamentary provisions and to carry out the testator’s purpose. If, to any extent, they ameliorate unnecessary rigors of the rules of the common law or the statute, they are still viable. We need not embrace ancient technical rules of the common law which were not part of our jurisprudence, nor need we discard desirable current ones simply to achieve uniformity. The Law Revision Commission, in recommending the changes, has expressed the hope that the *837 New York approach will not be wholly abandoned. (1960 Report, p. 324.) We should, therefore, be very slow to say that rules of construction that have been in use for many years are no longer part of our law.
In respect of the final question, it would seem clear that a uniform construction of uniform statutes is desirable where consonant with our general public policy. That consideration presents no difficulty here because the statutory intent seems to be that where separate trusts have been created and invalidity affects only some of them, the reduction of age is made only with respect to the separate parts that would otherwise be void. (67 Harv. L. Rev., supra, p. 1362.) The whole purpose of the statute seems to be to preserve the testator’s scheme insofar as it can be done without sacrificing validity of any part.
In the pending case, the decedent’s intent and purpose will best be realized by application of the principle of separability. (Restatement, Property, Appendix, ch. A, § 51.) There is nothing in the will of the donee that would prevent such a construction. It is true that the donee several times refers to “ the Trust ’ ’ rather than to 1‘ the trusts ’ ’, but he undoubtedly gave little actual thought to the matter of a single trust fund or several trusts administered in solido. The inference of separation ‘1 is required by the equality of the shares of the children in the income coupled with the provision for the release from the trust administration of the same share of the corpus at a fixed time in the life of each child.” (Id.) That inference is required, too, in order to carry out a testamentary plan that is reasonable, clearly expressed, and fully capable of realization under the principle of separability.
Applying these rules to the wills before us, the separate trusts for the children born during the donor’s lifetime are in all respects valid and can be admininstered in accordance with the terms of the donee’s will. The separate trusts for the two children which will terminate in all events prior to July 25,1983 are in all respects valid and can also be administered as directed in the instrument of appointment. (Real Property Law, § 179-b.) The separate trust for the youngest child would be invalid except for section 11-a of the Personal Property Law. By reducing the age contingency of this beneficiary to 21 years, the trust is valid and is otherwise in accordance with the donee’s intent and purpose.