[2 NYS3d 757]

In the Matter of BNY MELLON, N.A., as Trustee Under the Will of FRED A. DORIE, Deceased, Petitioner.

Surrogate's Court, Nassau County, December 30, 2014

### APPEARANCES OF COUNSEL

*McCoyd, Parkas & Ronan, LLP*, Garden City (*Jonathan Perrelle* of counsel), for petitioner.

*Favata & Wallace, LLP*, Garden City (*William G. Wallace* of counsel), for objectants.

### OPINION OF THE COURT

EDWARD W. MCCARTY III, J.

Before the court is the petition of BNY Mellon, N.A., as trustee of the trusts created under Article Fourth of the will of Fred A. Dorie. Petitioner seeks the settlement of the trustee's account, permission to resign, the appointment of successor trustees, and a determination of the validity, construction and effect of various provisions contained in Article Fourth of the decedent's will.

### Background

Fred A. Dorie (the decedent) died on February 2, 1991. Decedent's will, dated April 23, 1987, as amended by codicil

dated October 11, 1990 (the will), was admitted to probate by this court on February 22, 1991. Letters testamentary were issued to Donald V. Balistreri. On November 19, 1991, letters of trusteeship were issued to The Bank of New York, now known as BNY Mellon, N.A. (the trustee), in connection with the trusts created under Article Fourth of decedent's will.

Decedent was survived by two children, Jane Helena Roden and Arthur Frederick Dorie (Jane and Arthur). At the time of decedent's death, Jane had six children: John F. Roden, born 1949; Joanne H. Roden, born 1951; Margaret M. Coleman, born 1953; Thomas M. Roden, born 1958; James F. Roden, born 1960; and David M. Roden, born 1964 (John F., Joanne, Margaret, Thomas, James, and David).

Decedent also had seven great-grandchildren at the time of his death. John F. had three children: Jennifer Appelton, born 1976; John D. Roden, born 1977; and Brian Roden, born 1980. Margaret had two children: Derrick J. Coleman, born 1984; and Lawrence J. Coleman, born 1987. James had two children: Shawn Roden, born 1987; and Clay Roden, born 1989.

After the death of decedent, three additional great-grandchildren were born: Deidre M. Coleman, born 1992 to Margaret; and Kelly Roden, born 1993, and Pierce Roden, born 1996, to James.

Arthur had no issue.

The trustee asks the court for: (1) permission to resign as trustee; (2) the appointment of John F. and David as successor trustees; (3) judicial settlement of the trustee's account for the period of February 2, 1991 through June 22, 2014; and (4) a determination as to the construction, validity and effect of Article Fourth of the will, in order to determine how property should be distributed to the decedent's great-grandchildren who are contingent remainder beneficiaries of trusts established under the will, including whether or not certain provisions of Article Fourth violate New York's rule against perpetuities (EPTL 9-1.1) (the RAP) and, if so, the effect of that violation. No objections were filed to those portions of the relief that seek: (1) permission for the trustee to resign; (2) appointment of successor trustees; and (3) settlement of the account. However, as discussed below, a verified answer was filed in opposition to that portion of the relief that seeks a construction of Article Fourth of decedent's will.

At the time of his death, decedent's assets were valued at approximately $1,400,000, which included his home, a piece of

commercial real property (the Merrick Road property), securities, cash and cash equivalents. Under Article Fourth of the will, decedent directed his executor to divide his entire estate, after the distribution of decedent's personal property and cash legacies totaling $7,000, into two equal shares. The shares were to be held in separate trusts for the benefit of decedent's children, Jane and Arthur. The trusts were funded on January 1, 1992 with the Merrick Road property, valued at approximately $900,000, and cash of $125,000.

Trust for Jane

The trust provides that Jane is entitled to the trust's net income, payable monthly, during her lifetime. She can access principal for extraordinary medical expenses. In any year in which the annual net income earned by the trust is below $15,000, she can receive an amount sufficient to make up the difference from the principal. Upon the death of Jane, the trustee is directed to divide up the trust corpus for the benefit of Jane's children, who are the decedent's grandchildren, in the following percentages: John F. 15%; Joanne 20%; Margaret 15%; Thomas 15%; James 15%; and David 20%.

Under subparagraph (1) (d), these shares are to be held in a separate trust for each grandchild in accordance with subparagraph (1) (e). Under the terms of subparagraph (1) (e), each grandchild is to receive the net income from that grandchild's trust, with the principal being distributed at specified ages: one fourth at age 50; one third of the trust then remaining at age 55; one half of the trust then remaining at age 60; and the balance at age 65. In the event a grandchild predeceases Jane leaving issue (subparagraph [1] [c]), or dies leaving issue before the full distribution of the principal from that grandchild's trust (subparagraph [1] [f]), then such grandchild's trust shall be held in further trust for such grandchild's issue, who are decedent's great-grandchildren.

Subparagraph (1) (c) of Article Fourth provides:

> "The share set aside for the issue collectively of any child of my said daughter who shall have predeceased her shall be paid over to the issue of said deceased child, per stirpes. Payments to said child are to be made in the same manner as set forth in Paragraph 'FOURTH' 1. subdivision (e) herein."

Subparagraph (1) (f) of Article Fourth provides:

> "If any such child should die before receiving the full amount of the principal of his or her Trust, the

> principal of such Trust as then constituted, together with any accumulated income, shall be transferred to the then living issue of such child and be paid in accordance with the plan set forth in Paragraph 'FOURTH' 1. subdivision (e), in equal shares per stirpes; or if there be no such issue, to my daughter's then living issue in equal shares per stirpes, provided, however, that if a Trust created under this Will for any such issue of my daughter shall then be in existence, the share of such issue shall be added to such trust and shall be subject to all of the terms and conditions thereof."

While subparagraph (1) (f) directs how the share of a grandchild shall pass if the grandchild dies before age 65 leaving issue, the will does not contain a direction concerning the share of a grandchild who dies before age 65 without leaving issue. Although this ambiguity is not a current issue, the trustee asks the court for a construction in case the issue arises in the future.

The trustee believes that the provisions of subparagraphs (1) (c) and (1) (f) may violate the RAP. Due to the recent deaths of Arthur and Margaret, the trustee requests a construction of these two provisions to determine whether they violate the RAP and, if so, a determination of the effect of the violation.

The trustee also asks the court to provide a construction to determine whether, when applied to the interests of decedent's great-grandchildren, the age contingencies provided in subparagraph (1) (e) are based upon the age of the great-grandchild's deceased parent, who was a grandchild of decedent, or whether the age contingencies are based upon the age of the great-grandchild. This construction is necessary to apply the remedial provision of the RAP (EPTL 9-1.2) if the court determines that the trust language violates the RAP.

## Trust for Arthur

The trust provides that Arthur is entitled to the trust's net income, payable monthly, during his lifetime. He can access principal for extraordinary medical expenses. In any year in which the annual net income earned by the trust is below $15,000, he can receive an amount sufficient to make up the difference from the principal. Upon the death of Arthur, the trustee is directed to divide up the trust corpus as follows:

One third in trust for the benefit of Arthur's wife, Helga Dorie (Helga). At Helga's death, the remaining principal "shall be

divided and paid over to [Jane's] then living issue in the same percentage provided for in Paragraph 'FOURTH' 1. subdivision (c) and paid as per Paragraph 'FOURTH' 1. subdivision (e)."

Two thirds "to be placed in the trusts for [Jane's] children in the same percentages as set forth in Paragraph 'FOURTH' 1. subdivision (c), and to be paid in accordance with the plan set forth in Paragraph 'FOURTH' 1. Subdivision (e) thereof."

This portion of the will does not direct how a grandchild's share should be paid in the event that a grandchild dies before receiving the full amount of the grandchild's trust. It is unclear whether subparagraph (1) (f) applies to principal of a grandchild's trust that came from the trust created for the benefit of Arthur. The trustee states that a will construction is required to clarify this ambiguity.

Arthur died on February 28, 2011, survived by Helga, but no issue. Margaret died in September 2012, prior to reaching age 65. Margaret was survived by her husband, Lawrence Coleman, and by her three children, Derrick J. Coleman, Lawrence J. Coleman, and Deidre M. Coleman.

As a result of the death of Arthur, one third of the principal remaining in his trust went into a trust for the benefit of Helga, and two thirds of the principal went into trusts for the benefit of decedent's six grandchildren, all of whom were alive when Arthur died, according to the percentages listed in Article Fourth (1) (c) and the age restrictions listed in Article Fourth (1) (e).

Administration of the Trusts

The primary asset contained in the trusts is the Merrick Road property, which is subject to a 50-year lease, ending on June 30, 2022. Until Arthur's death, the trustee administered the Merrick Road property and distributed the net income in equal shares to Jane and Arthur. After Arthur's death, Jane continued to receive half of the income, but the half that had been payable to Arthur now became payable, under the terms of decedent's will, to Helga and to the decedent's six grandchildren in varying percentages, partially outright and partially in trust, because all but one of the grandchildren had already reached age 50, the age of the first principal distribution, but none of them had reached age 65, the age of the final principal distribution. Thus, from the date of Arthur's death, there were 13 separate interests in the Merrick Road property: Jane's trust, Helga's trust, six trusts for the six grandchildren, and

five grandchildren having outright interests. Based upon the grandchildren's different ages, and their respective entitlements to partial distributions of principal upon Arthur's death, the trusts, which previously had two equal beneficiaries, now had eight beneficiaries, in the following varying percentages: Jane, who has a 50% interest in trust; Helga, who has a 16.67% interest in trust; John F., who has a 3.75% outright interest and a 1.25% interest in trust; Joanne, who has a 5% outright interest and a 1.67% interest in trust; Margaret, who has a 2.5% outright interest and a 2.5% interest in trust; Thomas and James, who each have a 1.25% outright interest and a 3.75% interest in trust; and David, who has a 6.67% interest in trust; for a total of 100%.

The trustees found that the multitude of interests in the Merrick Road property caused difficulties in the management of the property and required the preparation and recording of a new deed whenever a grandchild reached the age of a partial distribution. When Margaret died, owning 2.5% of trust principal outright and 2.5% in trust, the share she owned outright passed through her intestate estate, which meant that her husband and three sons now shared her outright interest. The trustee maintains that under the terms of decedent's will, it is unclear how the share of Margaret that had been held in trust should be distributed.

For future ease of management, in October 2013 the trustee and the adult beneficiaries agreed to transfer the Merrick Road property to an LLC, and they further agreed that in place of BNY Mellon, N.A., John F. and David would seek appointment as successor trustees without bond.

### Verified Answer to the Petition

Counsel for Lawrence Coleman, as administrator of the estate of Margaret, and for her three children (collectively, the objectants), who are income and remainder beneficiaries, filed a verified answer to the trustee's petition. Objectants do not oppose those portions of the request for relief that concern a judicial settlement of the trustee's account, the resignation of the trustee, or the appointment of successor trustees. Since no objections have been filed to these requests for relief, objectants presume that the court will grant these requests for relief.

At the same time, objectants oppose the portion of the request for relief in which the trustee seeks the court's determination of the validity, construction and effect of the provi-

sions of Article Fourth of the will, and whether parts of that article violate the RAP. The basis for their opposition to the relief lies in their presumption that the court will grant the trustee's unopposed request to resign, leaving the trustee without standing to request a construction. They note that although the trustee administered the trust for 24 years, the trustee never previously raised this issue. It is the position of the objectants that should a construction become necessary, the successor trustees would be the proper parties to seek this relief.

### Reply Affirmation in Further Support of Accounting Petition

On October 15, 2014, counsel for petitioner filed an affirmation in reply to the verified answer filed by objectants. Counsel notes that the objections to the petition are limited to the standing of the trustee to request a construction of Article Fourth of decedent's will. In response, he argues that under SCPA 1420 (1), a fiduciary may petition the court in which the will was admitted to probate for a determination as to the validity, construction, or effect of any provision contained in the will. Moreover, SCPA 1420 (2) permits any party to an accounting proceeding to request a will construction that involves "the propriety of any debit or credit in the account."

Counsel notes that one purpose of the requested construction is to confirm the propriety of the allocation of the principal remaining in the trust created for the benefit of Margaret to her three children, and to determine whether to hold such property in continued trust or distribute it to the children outright. Although objectants presume that the trustee's request for permission to resign will be granted, the trustee argues that the ultimate outcome of this proceeding should have no impact upon the petitioner's current interest in the trust and the ability of the trustee to seek a construction.

The trustee points out that in order to conclude its administration of the trusts created under decedent's will, petitioner requires a construction of the provisions of Article Fourth, which will impact upon the trustee's distribution of principal remaining in the trust for the benefit of Margaret at the time of her death. The trustee is concerned that the Article Fourth provisions, which direct the trustee to keep the principal in separate sub-trusts until each great-grandchild reaches age 65, are a violation of the RAP, because three of the great-

grandchildren were not lives in being at the time of decedent's death on February 2, 1991. If there is a violation of the RAP, then all or some of the interests of the great-grandchildren should be distributed outright, rather than held in trusts. The trustee advises the court that these interests continue to be held in trust, pending this court's construction of the instrument.

Finally, the trustee argues that even if the court were to find that the trustee lacks standing to request a construction, then the court should make this determination sua sponte. The trustee relies on *Matter of Murphy* (NYLJ, Mar. 16, 1994 at 25, col 6 [Sur Ct, Richmond County]), arguing that if the court does not construe the will to determine how to distribute principal remaining in the trust of a grandchild who dies before age 65, the successor trustees will be left with the same unresolved question, which eventually will require the court's direction. The trustee points out that the proposed successor trustees have not objected to the relief requested, and that addressing the issue now, when the court has jurisdiction over all of the parties, would be the most efficient way to proceed.

The trusts currently contain approximately $2,130,000, of which the Merrick Road property represents approximately $2,000,000. The trustee asserts that a will construction is necessary because the deaths of Arthur and Margaret triggered the provisions of Article Fourth (1) (e) and (f), and the trustee requires clarification of the provisions of Article Fourth (1) (c).

Specifically, the requested will construction seeks to resolve four issues:

A. Whether Article Fourth (1) (f) applies to the provisions concerning Arthur's share of the estate (Article Fourth [2]). What was the intent of the decedent regarding the share of a deceased grandchild's trust that derived from Arthur's trust? The construction will determine whether the 2.5% interest held in Margaret's sub-trust as a result of Arthur's death will pass to her surviving issue.

B. Whether the provisions of Article Fourth (1) (f) violate the RAP, and, if so, the effect of that violation.

C. Whether the age contingencies listed in Article Fourth (1) (e) are based on the ages of the grandchildren or the ages of the great-grandchildren, when applied to the interests of the great-grandchildren.

D. How should the share designated for a grandchild under Article Fourth (1) (c) be distributed if the grandchild predeceases Jane without leaving issue?

## Analysis

The only issues before the court are those raised by the trustee's request for a determination of the validity, construction and effect of Article Fourth of the will of Fred A. Dorie and the question of the trustee's standing.

## Standing

Objectants have challenged the trustee's requests for relief on the basis that the trustee lacks standing. Accordingly, the court will address this first.

In *Matter of Magill* (10 Misc 2d 209 [Sur Ct, Westchester County 1957]), the court granted a trustee's request for construction of a testamentary trust while also granting trustee's request that the trustee be permitted to resign. SCPA 1420 (1) and (2) provide:

> "§ 1420. Proceeding for construction of will; effect of decree

> "1. A fiduciary or a person interested in obtaining a determination as to the validity, construction or effect of any provision of a will may present to the court in which the will was probated a petition showing the interest of the petitioner, the names and post-office addresses of the other persons interested, the particular portion of the will concerning which petitioner requests the determination of the court and the necessity for construction. If the application be entertained process shall issue to all persons interested in the question to be presented to show cause why the determination should not be made. On the return of process the court shall take such proof and shall make such decree as justice requires.

> "2. If in any proceeding for the judicial settlement of an account of a fiduciary any question is presented by any party to the proceeding respecting the propriety of any debit or credit in the account, the determination of which involves the validity, construction or effect of any portion of the will which requires such construction the presentation of the question shall have the same effect as if the petition had expressly requested a construction of

the particular portion of the will involved in such determination."

Each of these sections provides the trustee with standing to request a will construction. There is no indication that the trustee's request for permission to resign is relevant to its standing to seek this relief. Under SCPA 1420 (1), petitioner has standing as the trustee to request that the court construe the will. With respect to the applicability of SCPA 1420 (2), counsel for the trustee notes that among other questions, the petitioner, as a party to this accounting proceeding, is asking the court to construe the will in order to confirm whether the remaining principal in Margaret's trust should be allocated to her three children, and if so, whether in trust or by outright distribution.

The court finds that the trustee has standing to seek the relief of a will construction.

A. Application of Article Fourth (1) (f) to the Provisions Concerning Interests Derived from Arthur's Share of the Estate

The question posed by the trustee concerns the intent of the decedent concerning the allocation of that portion of a deceased grandchild's trust that was derived from Arthur's trust. The court's determination as to whether Article Fourth (1) (f) applies to Arthur's trust will determine whether the 2.5% interest held in Margaret's trust as a result of Arthur's death will pass to her surviving issue.

In any construction proceeding, the most important task of the court is to determine the testator's intention "as expressed in the will and codicil. All rules of interpretation are subordinate to the requirement that the actual intention of the testatrix be sought and effectuated as far as is consonant with the principle of law and public policy" (*Matter of Kronish*, 35 Misc 2d 192, 193 [Sur Ct, Westchester County 1962]). The intent of the testator must be "gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed" (*Matter of Fabbri*, 2 NY2d 236, 240 [1957]). "The intent of the testator must govern" (*Matter of Peart*, 47 Misc 2d 308, 309 [Sur Ct, Nassau County 1965] [citations omitted]).

"Where a general testamentary scheme may be established, it is the court's duty to afford such purpose force and effect" (*Matter of Hahn*, NYLJ, Nov. 7, 1997 at 32, col 1 [Sur Ct, Nassau County]). "[C]ourt[s] may add, excise, modify or transpose

language or provisions to bring it into harmony with and effectuate the testator's intent" (*Matter of Martin*, 146 Misc 2d 144, 148 [Sur Ct, NY County 1989]).

■ Jane's trust includes directions concerning how assets that are derived from her trust should pass in the event that a grandchild dies before receiving a final distribution at age 65. Under the terms of Article Fourth (1) (f), such assets would pass to the issue of the deceased grandchild or, if the grandchild died without issue, then the assets would pass to the then living issue of Jane, per stirpes.

While Arthur's trust does not include this or any other language concerning how assets derived from his trust should pass if a grandchild dies before age 65, petitioner argues that it is clear from reading the will that decedent intended the same direction for assets derived from Arthur's trust as was established for assets derived from Jane's trust. Essentially, the two trusts are the same. The trusts are governed by the same terms, were funded with the same assets, and until Arthur's death, were managed as one trust, as permitted pursuant to Article Sixth (2) of decedent's will. Except for the provision for Helga contained in Arthur's trust, the directions for the ultimate disposal of trust principal is the same in both trusts. According to Article Fourth (2) (b) of decedent's will, the principal of both Arthur's trust and Helga's trust will pass to decedent's grandchildren in the same way that the principal of Jane's trust passes.

Based upon all of the above, the court finds decedent's intent to be that Article Fourth (1) (f) applies to assets derived from Arthur's trust if a grandchild dies before age 65.

B. Violation of Rule against Perpetuities

The next question petitioner asks the court to address is whether the terms of Article Fourth (1) (f) violate the RAP, and, if so, the effect of that violation.

EPTL 9-1.1 codifies the RAP. EPTL 9-1.1 (a) contains the suspension of alienation rule, which provides:

"§ 9-1.1 Rule against perpetuities

"(a) (1) The absolute power of alienation is suspended when there are no persons in being by whom an absolute fee or estate in possession can be conveyed or transferred.

"(2) Every present or future estate shall be void in its creation which shall suspend the absolute power

of alienation by any limitation or condition for a longer period than lives in being at the creation of the estate and a term of not more than twenty-one years. Lives in being shall include a child conceived before the creation of the estate but born thereafter. In no case shall the lives measuring the permissible period be so designated or so numerous as to make proof of their end unreasonably difficult."

This rule voids an interest that suspends the power to alienate or transfer property in fee simple absolute for a period that extends beyond lives in being at the creation of the estate plus 21 years (the RAP period).

EPTL 9-1.1 (b) contains the vesting rule and provides:

"(b) No estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being at the creation of the estate and any period of gestation involved. In no case shall lives measuring the permissible period of vesting be so designated or so numerous as to make proof of their end unreasonably difficult."

This rule voids an interest that may not vest within the RAP period.

To determine whether there is a violation of the RAP, courts look at the time the interest was created and see what might have happened, rather than what actually occurred (*see Matter of Isganaitis*, 124 Misc 2d 1, 3 [Sur Ct, Kings County 1983]). If there is a violation of the RAP, the savings provision, found in EPTL 9-1.2, may apply. It provides:

"§ 9-1.2 Reduction of age contingency

"Where an estate would, except for this section, be invalid because made to depend, for its vesting or its duration, upon any person attaining or failing to attain an age in excess of twenty-one years, the age contingency shall be reduced to twenty-one years as to any or all persons subject to such contingency."

Thus, if an interest is invalid under EPTL 9-1.1 solely because the vesting or duration of that interest is contingent upon an individual reaching a specified age of more than 21 years, then the age contingency shall be reduced to 21 years for that individual.

The trustee believes that Articles Fourth (1) (c) and Fourth (1) (f) of decedent's will, which direct that Article Fourth (1) (e) shall apply to property allocated to decedent's great-

grandchildren, violate EPTL 9-1.1, the suspension of alienation rule, since these provisions might require that property remains in trust beyond the RAP period. Article Fourth (1) (c) and (f) provide that if a grandchild of decedent dies before Jane or before reaching age 65, then such grandchild's interests shall be transferred to that grandchild's issue, and held pursuant to Article Fourth (1) (e). That section directs that the property shall be held in further trust, but it is unclear whether the intended termination date is when the great-grandchild reaches age 65 or when the great-grandchild's deceased parent would have reached age 65, which presents yet another construction issue, discussed in section (C) below.

 The trustee points out that since the will does not include any provision that makes the income interests of great-grandchildren alienable, they are deemed inalienable. In support, the trustee cites the decision of this court in *Matter of Borman* (NYLJ, Sept. 27, 2000 at 29, col 2 [Sur Ct, Nassau County]). Since the great-grandchildren cannot transfer their interests, which were established on decedent's date of death, February 2, 1991, until they reach age 65, the interests of great-grandchildren who were born after decedent's death would violate the RAP. Even if the court were to find that the trusts terminate when the parent of the great-grandchild would have reached age 65, there is still a violation of the RAP, because the oldest grandchild on the date of decedent's death was 42 years old, and if all lives in being had died immediately following the decedent, then the trust would have continued for at least 23 years after the death of all lives in being, which is two years longer than the RAP permits.

As noted above, EPTL 9-1.2 provides a remedy and allows the court to reduce the age contingency as to any individual whose interest would be invalid as a result of an age contingency. Courts have applied this remedy on a case by case basis, rather than reducing the age contingency for an entire class of beneficiaries (*see Matter of Martin*, 58 Misc 2d 740 [Sur Ct, Westchester County 1968]; *Matter of Pendleton*, 41 Misc 2d 831 [Sur Ct, NY County 1964]).

The court finds that the remedy provided under EPTL 9-1.2 applies to the bequest under decedent's will which would otherwise be invalid as in violation of the RAP. The application of this remedy is only necessary for the interest of a great-grandchild who was not a life in being at the time of decedent's death (*see Matter of Pendleton*, 41 Misc 2d 831 [Sur Ct, NY

County 1964]). The law allows the reduction in the age contingency to be limited to those "who were not in being on the date of the creation of the trust" (*Matter of Pryor*, NYLJ, Oct. 29, 1998 at 29, col 3 [Sur Ct, NY County]).

Accordingly, the court finds that the interest held in trust for the benefit of Deidre Coleman, who was born after the death of decedent, must be paid to her at the age of 21, in accordance with EPTL 9-1.2. Since Deidre Coleman has already reached age 21, the property should be paid outright to her. The same result will apply to any other interests which may pass in the future to great-grandchildren born after the death of decedent, but not to the interests of great-grandchildren who were born before the death of decedent.

C. Applicable Age Contingencies

The next question presented by the trustee concerns the age contingencies listed in Article Fourth (1) (e), and whether they are based on the ages of the grandchildren, or the ages of the great-grandchildren, when applied to the interests of the great-grandchildren. The standard to be applied when the instrument lacks clear direction, as noted above, is the intent of the testator (*see Matter of Fabbri*, 2 NY2d 236, 240 [1957]). As expressed by the Court of Appeals in *Matter of Sliter*:

> "[T]he primary rule of construction . . . [is] that the intent of the testator must govern and that this intention of the testator must be garnered from the words of the will. If the testatrix expressed herself in ambiguous language, we endeavor to impute to the words used such meaning as will conform to the intention of the testatrix viewed in the light of the pattern upon which the will was executed" (*Matter of Sliter*, 286 NY 117, 122 [1941] [citations omitted]).

Pursuant to Article Fourth (1) (c) of decedent's will, if a grandchild with issue predeceases Jane, that grandchild's share shall be paid over to the grandchild's issue "in the same manner as set forth in Paragraph 'FOURTH' 1. Subdivision (e) herein." Pursuant to Article Fourth (1) (f), if a grandchild should die before age 65, then such grandchild's interest in trust "shall be transferred to the then living issue of such child and paid in accordance with the plan set forth in Paragraph 'FOURTH' 1. Subdivision (e), in equal shares per stirpes." Further, as noted by the trustee in his petition, the decedent did not distinguish between grandchildren and great-grandchildren

in Article Fourth (1) (e), which states the different age contingencies for partial distributions under the trust.

Based upon all of the language used by the decedent in creating these interests for his issue, it appears that the decedent's intent was to create a separate trust for each grandchild or great-grandchild who would receive property under his will, which would then be held until the beneficiary attained age 65, with partial distributions to be made at ages 50, 55 and 60. Accordingly, the court finds that the applicable age contingencies are based upon the age of each great-grandchild, and are not based on the age that such great-grandchild's deceased parent would have been, had the deceased parent lived. Trusts established for a great-grandchild born before the death of the decedent shall be distributed to that great-grandchild in the following manner: one fourth of the principal shall be distributed to the great-grandchild upon the great-grandchild's attainment of age 50; one third of the remaining principal shall be distributed to the great-grandchild upon the great-grandchild's attainment of age 55; one half of the remaining principal shall be distributed to the great-grandchild upon the great-grandchild's attainment of age 60; and the balance of the remaining principal shall be distributed to the great-grandchild upon the great-grandchild's attainment of age 65. Where it becomes economically infeasible to maintain any such trust, application for early termination pursuant to EPTL 7-1.9 should be considered.

D. Distribution of the Share of a Grandchild Who Predeceases Jane, Leaving No Issue

The final question put before the court by the trustee is how to distribute a share that was designated for a grandchild under Article Fourth (1) (c), if the grandchild predeceases Jane and leaves no issue. Article Fourth (1) (c), quoted in its entirety above, provides that the share of decedent's grandchild who predeceases Jane shall be paid over to that grandchild's issue per stirpes, in the manner provided in Article Fourth (1) (e), which provides for partial distributions of principal at ages 50, 55, and 60, with the final distribution to be made at age 65. There is no direction for the distribution of the share of a grandchild who predeceases Jane leaving no issue, and it is in connection with this ambiguity that the trustee seeks a construction.

Of the issues presently before the court, this is the only one that does not represent a fact pattern that has already oc

curred as Jane is still living. The trustee acknowledges that will constructions are generally denied if requested prior to the stated contingencies or prior to the death of a life tenant. However, the trustee relies on the discretionary power of the Surrogate to construe a will prematurely when the Surrogate finds that there is sufficient reason to do so. This court previously found, in *Matter of Nelson* (134 Misc 2d 936 [Sur Ct, Nassau County 1987], *affd* 154 AD2d 378 [2d Dept 1989]), that valid reasons to construe a will in advance may include a desire to save future expense by construing the will while the interested parties are before the court for another matter. The trustee argues that because all of the interested parties are currently before the court, the court should address the distribution of the share of a grandchild who dies before Jane leaving no issue, rather than force all of the parties to appear in a new proceeding in the event that this question arises in the future.

The trustee asks the court to ascertain the testator's intent from the entire instrument, again citing *Matter of Fabbri* (2 NY2d 236, 240 [1957]), and asserts that courts are empowered to add inadvertently omitted words to an instrument if that would fulfill the intent of the testator, citing *Matter of Barr* (233 App Div 290, 293 [2d Dept 1931]). The trustee then argues that based upon the entirety of the will, the decedent intended that the share of a grandchild who predeceased Jane without issue would pass to Jane's issue, per stirpes. There is, in fact, a parallel provision under Article Fourth (1) (f) of decedent's will for the share of a grandchild who survives Jane but dies before age 65 without issue. Accordingly, the trustee argues that the intent of the decedent concerning the share of a grandchild who dies without issue was to distribute that share to Jane's issue, regardless of whether the grandchild survived or predeceased Jane. The trustee asks the court to add the language of Article Fourth (1) (f) to the end of the second-to-last sentence of Article Fourth (1) (c), so that the final two sentences of that subsection will read as follows:

> "The share set aside for the issue collectively of any child of my said daughter who shall have predeceased her shall be paid over to the issue of said deceased child, per stirpes; or if there be no such issue, to my daughter's living issue in equal shares per stirpes, provided however, that if a Trust created under this Will for any such issue of my

daughter shall then be in existence, the share of such issue shall be added to such Trust and shall be subject to all the terms and conditions thereof. Payments to said child are to be made in the same manner as set forth in Paragraph 'FOURTH' 1. subdivision (e) herein."

The court has considered all of the arguments made by the trustee in favor of this construction, and notes that there is no opposition to the requested construction beyond the challenge to the trustee's standing, addressed above. The court directs that the language of Article Fourth (1) (f) shall be added to the end of the second-to-last sentence of Article Fourth (1) (c), so that Article Fourth (1) (c) shall now be construed to read as shown above.

## Conclusion

There is no opposition to the account, the request for permission to resign and the appointment of successor trustees. Accordingly, the account is approved as filed, the trustee is given permission to resign, and the successor trustees shall receive letters upon duly qualifying.

With respect to the trustee's request for construction of the will, the court has considered and denied objectants' challenge to the trustee's standing to make this request. For the reasons set forth above, the court finds that: (A) it was the decedent's intent that Article Fourth (1) (f) apply to assets derived from Arthur's trust if a grandchild dies before age 65; (B) the interest held in trust for the benefit of Deidre Coleman, who was born after the death of decedent, and the interest held in trust for any great-grandchild of the decedent who was born after the death of decedent, must be paid outright to that great-grandchild free of trust at the age of 21, in accordance with EPTL 9-1.2; (C) the applicable age contingencies for partial distributions of trust principal are based upon the age of each great-grandchild, and are not based on the age that such great-grandchild's deceased parent would have been; and (D) the language of Article Fourth (1) (f) shall be added to the end of the second-to-last sentence of Article Fourth (1) (c), so that the share of a grandchild under Article Fourth (1) (c) who predeceases Jane without issue shall be distributed to Jane's issue, per stirpes.